# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Joey Schreiber,

               Plaintiff,

                            Case No. 1:23-cv-373-MLB

v.

Catalyst Nutraceuticals, LLC,

               Defendant.

_____/

## **OPINION & ORDER**

In April 2019, Defendant (a dietary supplements company) hired Plaintiff as a sales employee in its "Brand" business unit.  (Dkt. 62 ¶ 2.) Plaintiff's Employment Agreement said he was "eligible to receive an annual discretionary bonus with a target amount of 25% of [his] Base Salary and a maximum amount of 100% of [his] Base Salary, subject to meeting objectives agreed between [him] and the Board (the 'Annual Bonus')."  (Dkt. 58-3 at 8.)  The Agreement also said "[p]ayment of the Annual bonus shall be made by the Company within thirty (30) days of the delivery of the Company's internally prepared financial statements." (Dkt. 58-3 at 8.)

The parties later established a "bonus schedule" that set forth Plaintiff's "objectives" for 2021. (*See* Dkts. 59-4 at 174; 62 ¶¶ 9, 15; 65-2 ¶ 12.)  One of these objectives required Plaintiff's business unit to generate more than $5.9 million in EBITDA.  (Dkt. 59-4 at 174.)  The bonus schedule indicated that, per the Employment Agreement, Plaintiff would receive a bonus if he met that objective.  (Dkts. 59-4 at 103–104, 174, 180; 65-2 ¶¶ 15–16.)  Plaintiff's business unit did that, generating more than $7 million in EBITDA.  (Dkt. 65-2 ¶ 36.)

In 2022, Plaintiff repeatedly asked Defendant how much his 2021 bonus would be, complained he hadn't yet received it, and complained when Defendant told him the bonus would be $51,000.  (Dkts. 59-1 at 83–87; 59-3 at 4; 65-2 ¶¶ 34, 37, 39, 43, 57.)  Defendant paid Plaintiff that bonus on June 24, 2022 and terminated his employment about two weeks later.  (Dkt. 65-2 ¶¶ 58, 67.)  Upon termination, Defendant asked Plaintiff to sign a Separation Agreement that prohibited him from disparaging Defendant or disclosing "the underlying facts leading up to or the existence or substance of [the Separation] Agreement."  (Dkts. 59-3 at 5; 63-1 ¶¶ 11–12.)  Plaintiff refused.  (Dkt. 62 ¶ 31.)

In late 2022, Plaintiff sued Defendant in Washington state court for failing to pay him a higher 2021 bonus in violation of the Washington Wage Payment Act (Count 1); failing to pay him a higher 2021 bonus— and paying him the bonus late—in violation of the Washington Wage Rebate Act (Count 2); interpreting the bonus provision in Plaintiff's Employment Agreement "solely in [Defendant's] favor" in violation of the implied covenant of good faith and fair dealing (Count 3); terminating Plaintiff in retaliation for his bonus complaints in violation of Washington's Equal Pay and Opportunities Act (Count 4), public policy (Count 5), and Silenced No More Act (Count 6); and asking Plaintiff to sign a separation agreement that included "unenforceable confidentiality and non-disparagement provisions" in violation of Washington's Silenced No More Act (Count 7).  (Dkt. 1-1 ¶¶ 4.1–4.34.)

Defendant removed Plaintiff's complaint to Washington federal court, which transferred it here.  (Dkts. 1; 24.)  Defendant now moves for summary judgment on all seven counts.  (Dkt. 58.)  Plaintiff also moves for summary judgment on Counts 2 and 7.  (Dkt. 56.)  The Court grants both motions in part.

I.      **Standard of Review**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

II.     **Plaintiff's Claim Under the Wage Payment Act (Count 1)**

The Washington Wage Payment Act says, "[w]hen any employee shall cease to work for an employer, . . . the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period."  Wash. Rev. Code § 49.48.010(2).  Count 1 claims Defendant violated this provision because it paid him only $51,000 for his 2021 bonus, was required to pay him more, and terminated him without paying the additional amount due.    (Dkt. 1-1 ¶¶ 4.1–4.4.) Defendant argues this claim fails because Defendant paid Plaintiff everything required under the bonus provision of their Employment Agreement.  (Dkt. 58-1 at 13–14.)  The Court agrees.

"[C]ontract interpretation . . . is a question of law for the court's decision."  *Mega v. Whitworth Coll.*, 158 P.3d 1211, 1216 (Wash. App. 2007); *see Johnson v. Allstate Ins. Co.*, 108 P.3d 1273, 1276 (Wash. App. 2005) ("A court interprets a contract as a question of law.").  Here, the

contract at issue—the Employment Agreement—required Defendant to pay Plaintiff an annual bonus if he met "objectives" to which both parties agreed. (Dkt. 58-3 at 8.) It required Defendant to "calculate[] [the bonus] based upon the achievement by the Company of performance targets to be established by agreement of [the parties]." (Dkt. 58-3 at 8.) It also said Plaintiff's bonus could not exceed "100% of [his] Base Salary." (Dkt. 58-3 at 8.) It otherwise left the amount of Plaintiff's bonus to Defendant's "discretion[]." (Dkt. 58-3 at 8.) It did not establish a minimum bonus amount, noting only a "*target* amount of 25% of [Plaintiff's] Base Salary." (Dkt. 58-3 at 8 (emphasis added).) And, in other documents explaining Plaintiff's annual bonus plans, Defendant expressly noted its "sole discretion . . . to make any modifications to . . . the bonus amounts at any time." (Dkt. 63-2 at 27–28.)

These provisions are fatal to Count 1. The undisputed evidence shows Plaintiff met his 2021 EBITDA objective and Defendant paid him an annual bonus as a result. (*See* Dkts. 62 ¶¶ 9, 15, 19; 65-2 ¶¶ 12, 36, 58; *see also* Dkt. 59-4 at 174, 180.) That is exactly what the Agreement required. Plaintiff insists his bonus should have been larger than the $51,000 he received. But the Agreement left that issue to Defendant's

discretion, meaning Defendant's failure to pay him more than $51,000 did not violate Section 49.48.010(2).   To the extent Count 1 claims otherwise, Defendant is entitled to summary judgment on that claim.

### III.   Plaintiff's Claim Under the Wage Rebate Act (Count 2)

The Washington Wage Rebate Act says an employer may not "[w]ilfully and with intent to deprive the employee of any part of his or her wages, . . . pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract."   Wash. Rev. Code § 49.52.050(2); *see id.* § 49.52.070 (establishing a civil cause of action for violations of Section 49.52.050(2)). Count 2 claims Defendant violated this provision because (1) Defendant untimely paid Plaintiff $51,000 for his 2021 annual bonus, and (2) Defendant was "obligated" to pay Plaintiff more than that amount. (Dkt. 1-1 ¶¶ 4.5–4.8.)  The second portion of this claim fails because, as explained above, the Employment Agreement gave Defendant the discretion to determine Plaintiff's bonus amount.  (*See* Dkt. 58-1 at 13–14.)  But Plaintiff is entitled to summary judgment on the first portion of his claim because, although Defendant paid him a 2021 bonus, the undisputed evidence shows it did so after the deadline required by the

Employment Agreement—and this untimeliness violated Section 49.52.050(2) as a matter of law.

That conclusion is unavoidable after *Backman v. Nw. Pub. Ctr.*, 197 P.3d 1187 (Wash. App. 2008). There, an employer paid its employee "all of the commissions" to which the employee was entitled but did so after the deadline established in the parties' employment contract. *Id.* at 1188–89. The trial court found this "delayed payment of commissions" did not violate Section 49.52.050(2) because the statute does not apply where an employee "ultimately receive[s] the wages owed." *Id.* at 1189. The Washington Court of Appeals reversed, finding "delayed payment of wages *does* give rise to employer liability under RCW 49.52.050 where such delay is willful." *Id.* at 1189 (emphasis added). The Court of Appeals further held the employee was entitled to summary judgment under the willfulness standard because the employer "wrote the contract" and "failed to adhere to the payment schedule established by the contract." *Id.* at 1190.

So too here. Defendant co-wrote Plaintiff's Employment Agreement. (Dkt. 58-2 at 16 (Agreement "drafted jointly by the parties").) The Agreement required Defendant to pay Plaintiff his 2021 annual

bonus "within thirty (30) days of the delivery of the Company's internally prepared financial statements in accordance with GAAP for the [2021] Bonus Year." (Dkt. 58-3 at 8.) Defendant "completed its internally prepared and audited financial statements for the 2021 bonus year on April 29, 2022." (Dkt. 63-1 ¶ 5.) But Defendant did not pay Plaintiff his 2021 bonus until June 24, 2022, more than 30 days later. (Dkt. 65-2 ¶ 58.) Defendant "failed to adhere to the payment schedule established by [its own] contract." *Backman*, 197 P.3d at 1190. So, as in *Backman*, Defendant violated Section 49.52.050(2) as a matter of law.

Defendant concedes it paid Plaintiff his bonus more than 30 days after Defendant "completed" its internal financial statements. But it says this does not matter because the "delivery" of the company's financial statements—not the "completion" of those statements—started the 30-day clock under the Employment Agreement. (Dkt. 63 at 13–14.) The Court rejects this argument. Defendant does not explain the difference between "delivery" and "completion," explain why the latter is insufficient to establish the former in this context, or really do anything beyond pointing out that Plaintiff's evidence uses one word and the

Employment Agreement uses another. That is not enough to avoid summary judgment.

The argument also fails on the merits. To the extent Defendant implies "delivery" requires not only completion but transmission, nothing in the Agreement supports that construction. The Agreement does not identify anyone to whom the documents must be transmitted. It is unclear why the transmission of Defendant's "internally prepared" documents would even be required. And the dictionary defines "delivery" broadly enough to include "[t]he process of bringing into being an idea, piece of work, etc.," "the action of producing something," "the fact of achieving or producing something that has been promised," or "[t]he act of providing or imparting . . . something that is promised or expected."[1] These definitions fairly encompass Defendant's completion of its financial statements, even if Defendant didn't transmit those documents to someone else. *See Real Mkt. Data, LLC v. Blue Stone Ent., LLC*, 2022 WL 202710, *3 (Wash. App. Jan. 24, 2022) ("When a contract term is

---

[1] *See Delivery*, Oxford English Dictionary (online edition), https://www.oed.com/dictionary/delivery_n?tab=meaning_and_use#7266906; *Delivery*, Cambridge English Dictionary (online edition), https://dictionary.cambridge.org/us/dictionary/english/delivery.

undefined, we often turn to dictionary definitions to determine its ordinary meaning.").

Defendant next claims the wage protections in Section 49.52.050(2) do not apply to Plaintiff's 2021 bonus because the bonus was not a "wage." (Dkts. 58-1 at 11–13; 63 at 10–12; 65 at 3–6.)  The Court rejects this argument as well.  Washington courts "liberally construe" Section 49.52.050(2)—and other wage statutes—to "protect money due to employees." *LaCoursiere v. Camwest Dev., Inc.*, 339 P.3d 963, 967–68 (Wash. 2014); *Essig v. Lai*, 444 P.3d 646, 650 (Wash. App. 2019).  Courts thus apply a "broad definition" of wages that includes "compensation due to an employee by reason of employment" or "a pledge or payment of usually monetary remuneration by an employer especially for labor or services[,] often including bonuses." *LaCoursiere*, 339 P.3d at 968; *Essig*, 444 P.3d at 649.

Plaintiff's 2021 bonus falls within the first prong of this definition. Defendant repeatedly characterized Plaintiff's bonus as "compensation," including in the Employment Agreement.  (Dkts. 58-3 at 7–8; 59-1 at 165; 59-2 at 17, 57.)  The bonus was "due" because Plaintiff met a contractual objective—an EBITDA target—that triggered his entitlement to receive

it. And Plaintiff's entitlement to the bonus was based on "work performed," meaning it was due "by reason of employment" rather than "purely gratuitous." *LaCoursiere*, 339 P.3d at 967–68. Defendant's characterization of the bonus as "compensation" supports this last point because it suggests Plaintiff received the bonus "for doing [his] job."[2] Defendant also paid the bonus based on the EBITDA generated by Plaintiff's business unit, which again suggests an effort to tie the payment to Plaintiff's work. (Dkts. 59-1 at 165; 59-2 at 38; 62 ¶ 2); *see LaCoursiere*, 339 P.3d at 965 (plaintiff's bonuses were wages because they were "based on net profits from individual projects that [plaintiff] worked on"). And, when Defendant's chairman was asked at his deposition whether he had "any role in assessing [Plaintiff's] performance," he replied that he "approved [Plaintiff's] bonus"—further underscoring the connection between Plaintiff's work and his bonus. (Dkt. 59-2 at 42; *see* Dkt. 59-4 at 65–66 (Plaintiff's "performance" was reflected in his bonus).)

---

[2] *See Compensation*, Cambridge English Dictionary (online edition), https://dictionary.cambridge.org/us/dictionary/english/compensation (defining "compensation" as "the combination of money and other benefits . . . that an employee receives for doing their job").

For similar reasons, Plaintiff's 2021 bonus also constitutes a "wage" under the second prong of the above definition. Defendant "pledge[d]" to pay—and ultimately did "pay[]"—the bonus because Plaintiff met an objective that triggered his entitlement to receive it under the Employment Agreement. And the bonus was "monetary remuneration . . . for labor or services" because Defendant repeatedly referred to it as "compensation" and tied it to Plaintiff's work.

Defendant counters that the bonus was not a wage because the Employment Agreement gave Defendant unfettered discretion to determine whether to pay Plaintiff a bonus. (Dkts. 58-1 at 11–13; 63 at 10–12; 65 at 3–6.) But the Agreement did *not* give Defendant such discretion; to the contrary, it said "[p]ayment of the [bonus] *shall* be made" if Plaintiff meets his "objectives" and remains at the company "through the applicable payment date." (Dkt. 58-3 at 8 (emphasis added).) Defendant only had discretion to determine the bonus amount. Defendant has not shown this kind of bonus—one that is mandatory if the employee meets specific work objectives—is a non-wage that falls outside a statute enacted to "protect money due to employees." *LaCoursiere*, 339 P.3d at 968; *see Brown v. Suburban Obstetrics &*

*Gynecology, P.S.*, 670 P.2d 1077, 1078, 1080–81, 885 (Wash. App. 1983) (annual payment was a wage where it was contingent on "the gross receipts to the corporation that [plaintiff] generated by his professional services"); *see also Smith v. Lamb-Weston, Inc.*, 980 F.2d 738 *2 (9th Cir. 1992) ("Washington courts have . . . treated compensation as 'wages' in a number of contexts requiring that the term be construed broadly as compensation, not narrowly as an agreed upon payment per hour of work."); *Covington v. Wise*, 2024 WL 1252425, at *3, 5–6 (W.D. Wash. Mar. 25, 2024) (unpaid bonus was a wage where defendant promised to pay it "only if there [was] enough money").[3]

Even if Defendant did have the discretion to pay Plaintiff no bonus at all, that would not change the outcome here because Defendant elected

---

[3] A bonus "contingent on satisfaction of . . . listed criteria" may be a non-wage if the criteria are so "subjective and indeterminate" that "payment of the bonus [remains] entirety discretionary." *Covington*, 2024 WL 1252425, at *5. Defendant does not invoke that theory here. And the record does not conclusively show it applies. To the extent Defendant suggests its discretion to determine the amount of Plaintiff's bonus included the discretion to award Plaintiff a bonus of $0 and thus no bonus at all, the Court rejects that argument. Such a construction would nullify the explicit contractual requirement to "pay[]" Plaintiff a "bonus," including because the transmission of $0 is neither a payment nor a bonus but the withholding of both.

13

to pay the bonus rather than withhold it. "[O]nce [Defendant] paid [Plaintiff] the bonus based on his work performance, that bonus became a wage" regardless of whether Defendant "maintained the discretion to give the bonus in the first place." *LaCoursiere*, 339 P.3d at 967. The Court rejects Defendant's argument that Plaintiff's 2021 bonus is exempt from Section 49.52.050(2) as a non-wage. Plaintiff is entitled to summary judgment on his untimely-bonus theory.

## IV.   Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 3)

Count 3 claims Defendant "entered into an agreement with Plaintiff to pay him bonuses" and "breached its implied duty of good faith and fair dealing by interpreting [that agreement] exclusively in its favor." (Dkt. 1-1 ¶¶ 4.9–4.13.) Defendant argues this claim fails under Georgia law because it is "untethered to a breach of contract claim." (Dkt. 58-1 at 24.) The Court agrees.

The Court applies Georgia law here because the implied covenant of good faith and fair dealing is "contractual in nature" and the parties' Employment Agreement says contract disputes "shall be governed by . . . the laws of the State of Georgia." (Dkt. 58-3 at 15); *ServiceMaster Co., L.P. v. Martin*, 556 S.E.2d 517, 522 (Ga. Ct. App. 2001); *see Tech. Sols.*

14

*Int'l, Inc. v. Partech, Inc.*, 2010 WL 11549396, at *3 (S.D. Fla. Nov. 9, 2010) (claim for breach of the implied covenant was "a contract claim" and thus fell within a choice-of-law provision for contract claims).  Under Georgia law, the implied covenant of good faith and fair dealing "modifies the meaning of all explicit terms in a contract" but is not itself "an independent contract term."  *Adr1assist, LLC v. Lima One Cap., LLC*, 580 F. Supp. 3d 1293, 1300 (N.D. Ga. 2022).  This means it "cannot be breached apart from the contract provisions that it modifies."  *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1243 (11th Cir. 2019).  It also means that, to prevail on a claim for breach of the covenant, plaintiff must show defendant violated "an actual, express contract term."  *Adr1assist*, 580 F. Supp. 3d at 1300; *see Tims*, 935 F.3d at 1243 ("A plaintiff must set forth facts showing a breach of an actual term of an agreement to state a claim for breach of the implied duty of good faith and fair dealing.").

Plaintiff has not done that here.  Count 3 claims Defendant wrongfully "interpreted the [bonus] provisions of the [Agreement] exclusively in its favor."  (Dkt. 1-1 ¶ 4.12.)  But it does not claim Defendant breached "an actual term of [the] agreement."  *Tims*, 935 F.3d

at 1243.  Plaintiff concedes he "did not bring a breach of contract claim."
(Dkt. 61 at 23.)  And he does not dispute his claim fails under Georgia
law.  (Dkt. 61 at 23–24.)  So the Court grants Defendant's motion for
summary judgment on Count 3.  *See Robinson v. SunTrust Mortg., Inc.*,
2018 WL 3731119, at \*7 (N.D. Ga. May 7, 2018) ("Absent a specific,
actionable breach of contract claim, Plaintiffs' claim for breach of the
implied duty of good faith and fair dealing must fail."); *Cone Fin. Grp.,
Inc. v. Emps. Ins. Co. of Wausau*, 2010 WL 3221831, at \*2 (M.D. Ga. Aug.
13, 2010) ("The law is clear that there exists no independent cause of
action for breach of good faith and fair dealing outside of a claim for
breach of contract.").

## V.   Plaintiff's Wage Claims Under the Equal Pay and Opportunities Act and Silenced No More Act (Counts 4 & 6)

The Washington Equal Pay and Opportunities Act says
"[a]n employer may not discharge or in any other manner retaliate
against an employee for . . . [i]nquiring about, disclosing, comparing, or
otherwise discussing the employee's wages."  Wash. Rev. Code
§ 49.58.040(2)(a).  The Washington Silenced No More Act says an
employer may not "discharge or otherwise discriminate or retaliate
against an employee for disclosing or discussing conduct that the

employee reasonably believed to be . . . wage and hour violations." Wash. Rev. Code § 49.44.211(3).  Counts 4 and 6 claim Defendant violated these provisions by terminating Plaintiff's employment in retaliation for his bonus complaints.  (Dkt. 1-1 ¶¶ 4.14–4.17, 4.23–4.28.)  Defendant argues these claims fail as a matter of law because Plaintiff's bonus was not a "wage."  (Dkt. 58-1 at 15.)  The Court rejected this argument in connection with Count 2 and it does so here again for the same reasons.

Defendant also argues Counts 4 and 6 fail because Defendant terminated Plaintiff for "legitimate non-retaliatory reasons" and Plaintiff has not alleged any discrimination based on sex or gender.  (Dkt. 58-1 at 14 n.3, 19 n. 4.)  But Defendant asserts these arguments only in footnotes. So the Court declines to consider them.  *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 n.5 (11th Cir. 2019) ("We do not ordinarily consider arguments raised in passing in one footnote rather than the body of the brief."); *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 2020 WL 13104165, at *4 n.2 (M.D. Fla. Aug. 10, 2020) ("The Court generally does not consider arguments raised in a footnote.").  Defendant is not entitled to summary judgment on Counts 4 and 6.

17

## VI.   Plaintiff's Claim for Wrongful Termination in Violation of Public Policy (Count 5)

Count 5 asserts a Washington tort claim for "wrongful discharge in violation of public policy." *Martin v. Gonzaga Univ.*, 425 P.3d 837, 842 (Wash. 2018).   Specifically, it claims Plaintiff's bonus complaints were "a motivating factor in Defendant's decision to terminate [his] employment" and this offends Washington's public policy against "nonpayment of compensation."   (Dkt. 1-1 ¶¶ 4.18–4.22.)   Defendant argues this claim fails as a matter of law because, although Washington policy does support "payment of wages," Plaintiff's 2021 bonus was not a "wage."   (Dkt. 58-1 at 16–17.)   The Court rejects this argument for the reasons explained in connection with Count 2.

Defendant also argues Count 5 fails under the *McDonnell Douglas* framework because Defendant articulated a legitimate reason for Plaintiff's termination and Plaintiff cannot establish pretext.   (Dkt. 58-1 at 18–19.)   The Court again disagrees.   "An employee may satisfy the pretext prong [of the *McDonnell Douglas* test] by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a

substantial factor motivating the employer." *Mackey v. Home Depot USA, Inc.*, 459 P.3d 371, 382 (Wash. App. 2020). This means Plaintiff need not show Defendant's proffered explanation for his termination was false or insincere. *See id.* at 387; *Dries v. Sprinklr, Inc.*, 2020 WL 6119423, at *7 (W.D. Wash. Oct. 16, 2020) (plaintiff may establish pretext "despite the employer's legitimate reason"). He need only show "a reasonable jury could find" his bonus complaints were *one* of the factors—a "substantial" one—in Defendant's decision to terminate his employment. *Mackey*, 459 P.3d at 382; *see Hoffman v. Providence Health & Servs. - Washington*, 2023 WL 3590461, *8 (Wash. App. May 23, 2023) ("A substantial factor need not be the *only* factor motivating the discharge because an employer's decision may be based on both legitimate and illegitimate reasons."). This is a "low bar," which means "[s]ummary judgment for an employer is rarely appropriate in a discriminatory discharge case." *Mackey*, 459 P.3d at 382; *Stewart v. Prometric LLC*, 2021 WL 124316, at *10 (W.D. Wash. Jan. 13, 2021).

The Court concludes a reasonable jury could find Plaintiff's bonus complaints were a substantial factor in his termination (even if other factors also played a role). Plaintiff testified that, in the first half of 2022,

he "made a ton of complaints" about his bonus to John Licari (his boss), Randy Jackson (Defendant's Chief Financial Officer), and Chad Riedel (Defendant's Executive Chairman).  (Dkt. 59-1 at 84–87.)  In June 2022, when Mr. Licari forwarded one of Plaintiff's bonus emails to Messrs. Jackson and Riedel, Mr. Jackson replied that Plaintiff's bonus was "far more than [he] deserve[d]" and Defendant didn't "need" Plaintiff anymore.  (Dkt. 59-4 at 180–181.)  When Plaintiff continued to complain about his bonus, Messrs. Jackson and Riedel put "pressure" on Mr. Licari to terminate Plaintiff's employment.  (Dkts. 57-3 at 25–30; 59-1 at 84–87.)  Mr. Licari pushed back but eventually "acquiesced" and terminated Plaintiff in early July 2022.  (Dkt. 57-3 at 25–31.)  Mr. Licari testified Plaintiff's bonus was a "large part" of the reason for his termination. (Dkt. 57-3 at 37–38.)  Given this evidence, and the record more generally, a jury could find Plaintiff's bonus complaints played a substantial role in Defendant's decision to terminate his employment.  *See Theidon v. Harvard Univ.*, 948 F.3d 477, 496 (1st Cir. 2020) ("We proceed with caution and restraint when considering summary judgment motions where . . . issues of motive and intent must be resolved."); *Ulrich v. City*

& *Cnty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002)

(motive "involves questions of fact that normally should be left for trial").[4]

## VII.   Plaintiff's Separation-Agreement Claim Under the Silenced No More Act (Count 7)

The Washington Silenced No more Act probits an employer from

"request[ing] or requir[ing] that an employee enter into any agreement"

not to "disclose or discuss conduct, or the existence of a settlement

involving conduct, that the employee reasonably believed . . . to be . . .

illegal retaliation [or] a wage and hour violation . . . , or that is recognized

as against a clear mandate of public policy."   Wash. Rev. Code

§ 49.44.211(1), (4).   Count 7 claims Defendant violated this provision by

asking Plaintiff to sign a Separation Agreement that prohibited him from

disparaging Defendant or disclosing "the underlying facts leading up to

or the existence or substance of [the Separation] Agreement."  (Dkts. 59-

---

[4] Washington courts routinely apply *McDonnell Douglas* to claims for wrongful discharge in violation of public policy.  *See, e.g.*, *Mackey v. Home Depot USA, Inc.*, 459 P.3d 371, 381 (Wash. App. 2020); *Burke v. City of Montesano*, 2017 WL 702507, at *4 (Wash. App. Feb. 22, 2017).   The Court need not, however, take a final position on whether the test applies here because Defendant moves for summary judgment on the basis that it does.  (*See* Dkt. 58-1 at 15–19.)  So, if the test is inapplicable, Defendant loses.  And, if the test *is* applicable, Defendant still loses because Plaintiff has met his burden to show pretext.  Either way, summary judgment is inappropriate.

3 at 5; 63-1 ¶¶ 11–12.)  Defendant argues the Court lacks subject matter jurisdiction over this claim because Plaintiff has not shown Defendant's request for him to sign the Separation Agreement—a request he *rejected*—caused him an Article III injury in fact.  (Dkt. 58-1 at 20–23.) The Court agrees.

A plaintiff cannot seek relief in federal court without showing he has standing to do so under Article III of the Constitution.  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998).   To establish standing, plaintiff must show—among other things—that he "suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).  An injury is concrete if it "actually exists," meaning it is "real" and "not abstract." *Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023).   It is particularized if it "affects the plaintiff in a personal and individual way." *Id.*  It is actual if it has "already occurred."  *Soule v. Connecticut Ass'n of Sch., Inc.*, 90 F.4th 34, 47 (2d Cir. 2023).   And it is imminent if it is "certainly impending" or there is a "substantial risk" it will occur.  *Tsao*

*v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1339 (11th Cir. 2021).  "The plaintiff bears the burden of establishing each element." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019).  And plaintiff must meet that burden for "each claim" he asserts.  *Warren Tech., Inc. v. UL LLC*, 2018 WL 10550930, at *5 (S.D. Fla. Oct. 31, 2018); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press.").

The only injury Plaintiff alleges in his briefing is a violation of his "statutorily created legal rights" arising from Defendant's request that he sign the Separation Agreement.  (Dkts. 61 at 21–22; 64 at 13–14.)  But "alleging a statutory violation is not enough to show injury in fact." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("[T]his Court has rejected the proposition that [a statutory violation] automatically satisfies the injury-in-fact requirement.").  Instead, Plaintiff must show he has been "*concretely harmed* by [the] statutory violation." *TransUnion*, 594 U.S. at 427 ("[A]n injury in law is not an injury in fact.").  Plaintiff does not even try to make that showing here.  Indeed, he admits Count 7 seeks only "statutory damages" because he suffered no "damages

in-fact"—that is, no "actual" damages—from Defendant's failed attempt to enter into the Separation Agreement with him.   (Dkts. 58-1 at 61 at 21–22; 64 at 13–14.)

Plaintiff has not met his burden to establish the constitutional standing required to assert Count 7 in federal court.   So the Court remands Count 7 to state court—the Washington superior court where this case originated—for lack of subject matter jurisdiction.  *See Reed v. Heil Co.*, 206 F.3d 1055, 1063 (11th Cir. 2000) (granting summary judgment on one claim but remanding to state court another claim over which the court lacked subject matter jurisdiction).[5]

## VIII. Conclusion

Defendant's Motion for Summary Judgment (Dkt. 58) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's Motion for

---

[5] Defendant argues in a footnote that, although "remand is typically the only remedy for lack of subject matter jurisdiction in cases removed from state court," this Court should *dismiss* Count 7 because "remand to Washington state court would be futile." (Dkt. 65 at 14 n.7.)  Given the limited briefing on this issue, the Court elects to follow the traditional path and remand Count 7 to the state court where it began.  *See Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, 88–89 (1991) (remanding a claim where futility wasn't "certain").  The state court may then decide how to proceed after more robust input from the parties.

Partial Summary Judgment (Dkt. 56) is **GRANTED IN PART** and **DENIED IN PART**.  Defendant is entitled to summary judgment on Count 1, the portion of Count 2 that claims Defendant failed to pay Plaintiff the requisite amount for his 2021 bonus, and Count 3.  Plaintiff is entitled to summary judgment on the portion of Count 2 that claims Defendant untimely paid him his 2021 bonus.  Counts 4–6 may proceed.  The Court **REMANDS** Count 7 to King County Superior Court in Washington State for lack of subject matter jurisdiction.

The Court **ORDERS** this case to mediation.  The parties may retain a private mediator at their own expense.  Or they may ask the Court to appoint a magistrate judge to conduct the mediation.  The parties are not required to pay for mediation by a magistrate judge.  The parties must advise the Court of their mediation preference no later than 21 days after the date of this Order.

If the parties elect to retain their own mediator, they shall identify the mediator no later than 35 days after the date of this Order.  Mediation must occur within 90 days after the date of this Order.  The parties must have present at the mediation a person with authority to settle this

litigation.    The  parties  shall  file  a  report  on  the  outcome  of  their

mediation no later than 7 days after the mediation concludes.

The  Court  **STAYS**  this  case  pending  mediation.    The  Court

**DIRECTS**  the  Clerk  to  **ADMINISTRATIVELY  CLOSE**  this  case

during the stay.

**SO ORDERED** this 17th day of September, 2024.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE